# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

JEFFREY ANTONIO BROWN,  :

    Petitioner,  :    Case No. 3:08cv00477

 vs.  :    District Judge Timothy S. Black
        Magistrate Judge Sharon L. Ovington

WARDEN, Lebanon Correctional  :
Institution,[1]

    :

    Respondent.  :

    :

# REPORT AND RECOMMENDATIONS[2]

## I.    Introduction

On May 16, 2005, Jeffrey Antonio Brown wanted to "hit a lick" or "get a lick," street lingo meaning to get money or drugs by any means necessary.[3]  He armed himself with a gun and shoved his way into a motel room.  The room's occupant, John Tindull, fought back, and Brown shot him several times.  Tindull survived.

Rather than hitting or getting a lick, Brown got arrested.  His subsequent criminal

---

[1]  Brown's present incarceration in the Ross Correctional Institution means that RCI Warden Rob Jeffreys is the proper Respondent.  *See* Rule 2(a), Rules Governing Section 2254 Cases.  The case caption should remain the same to maintain docketing continuity.

[2]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[3]  Brown argues, in part, that this is "contradicted by" the preliminary hearing transcript.  (Doc. #30 at 1642 (citing "PH. p. 10, lines 2-3")).

convictions, at the close of a jury trial in state court, led to his present confinement in the Ross Correctional Institution in Chillicothe, Ohio.

Brown brings this case *pro se* seeking a Writ of Habeas Corpus "freeing him" (Doc. #4 at 112) from his confinement due to many claimed violations of his rights under the United States Constitution and under Ohio law. The case is before the Court upon Brown's Petition and Amended Petition (Doc. #s 4, 10), Respondent's Return of Writ and Supplemental Memorandum (Doc. #s 20, 21), and Brown's Traverse (Doc. # 30). The case is also before the Court upon additional Motions and Memoranda (Doc. #s 38, 39, 41-43, 47, 48) and the record as a whole.

## II.  Background

### A.  The Events

The Ohio Court of Appeals described the facts underlying Brown's conviction as follows:

> The state's evidence at trial established that the victim, John Tindull, was acquainted with Amy Goens, and that the two had "hung out" at the Dayton Motor Motel on North Keowee Street together on Sunday, May 15, 2005. Both Tindull and Goens used crack cocaine. Goens left the hotel after a fight with Tindull and wandered around other hotels in the area.

> In the early morning hours of May 16, Goens crossed paths with Brown, who was an acquaintance of hers but whom she had not seen for a few years. Goens believed that Brown had a gun because she felt a hard object when he greeted her with a hug. Brown told Goens that he was

2

"going to get a lick,"[4] which she understood to mean that he would get money or drugs by whatever means necessary.  Brown led Goens to the Dayton Motor Motel and told her to knock on the door to Room 4, Tindull's room.  According to Goens, she resisted, but Brown forced her to knock.  Brown remained out of sight when Tindull looked out of his window.  Seeing Goens, Tindull opened the door, whereupon Brown forced his way into the room.  Brown ordered Tindull to the floor and put a pillow over his head.  When Tindull fought back, Brown shot him three times.  Goens fled through a window, but she did not go to the police.

Brown encountered Goens on the street a short time later, grabbed her, and led her to a garage where his car was parked.  Both changed out of their bloody clothes, and Brown described his plan for destroying the evidence on the clothes.  Goens later seized an opportunity to flee from Brown.  Later that night, Brown admitted to Malissa McLain that he had shot someone at the Dayton Motor Motel earlier in the day.

An anonymous tip led the police to Brown.  Although Tindull was unable to identify Brown from a photographic array prepared by the police, he did lead the police to Goens.  Goens identified Brown from the photo array as the man who had shot Tindull.  Tindull subsequently identified Brown at the preliminary hearing.

(Doc. #20, Exh. 18 at Page ID#s 651-52); *State v. Brown*, 2007 WL 1288574 at *1 (Ohio

App. 2 Dist., April 27, 2007).

### B.  **Procedural History**

### 1.

On August 9, 2005, a grand jury in the Montgomery County, Ohio Court of

Common Pleas indicted Brown on one count of aggravated robbery and two counts of

---

[4] Witness Goens testified that Brown mentioned "[s]omething about he was going to hit a lick." (Doc. #21 at 1057).  Whether he said "hit a lick" or "get a lick," Goens understood him to mean, "get money or drugs or whatever by whatever means necessary."  *Id.*

felonious assault.  (Doc. #20, Exhibit 1).  Nearly four months later, on December 2, 2005, a grand jury in the same court re-indicted Brown on the following charges:  one count of aggravated robbery; two counts of felonious assault, each with a firearm specification; one count of having a weapon while under a disability; one count of tampering with evidence; one count of kidnaping with a firearm specification; and one count of aggravated burglary with a firearm specification.  (Doc. #20, Exh. 2).

Before Brown's jury trial began, he filed a Motion to Dismiss asserting speedy trial violations.  After holding a hearing, the trial judge found no speedy trial violation and overruled Brown's Motion to Dismiss.  (Doc. #20, Exhs. 3, 4; *see* Doc. #21 at 975-85).  Brown filed additional pretrial motions including a Motion to Suppress "evidence of identification...."  (Doc. #20, Exh. 5).  After holding an evidentiary hearing, the trial judge found no merit in Brown's Motion and overruled it.  (Doc. #20, Exh. 6; *see* Doc. # 21 at 986-1013).

Jury trial began on February 6, 2009 and continued until the jury returned its verdict on February 9, 2009.  The jury found Brown guilty of committing (1) two counts of felonious assault with firearm specifications, (2) having a weapon while under a disability, and (3) aggravated burglary.[5]  His resulting sentence amounted to a nineteen-year term of imprisonment, which he is presently serving.

---

[5]  The jury also found Brown not guilty of aggravated robbery and kidnaping.

**2.**

Brown, through new counsel, pursued a timely direct appeal in the Ohio Court of Appeals, raising six Assignments of Error.  The Ohio Court of Appeals found no merit in Brown's arguments and dismissed his direct appeal.  (Doc. #20, Exh. 18).

The Ohio Supreme Court declined jurisdiction to review Brown's case.  (Doc. #20, Exh. 22).

**3.**

The Ohio Court of Appeals issued its decision on Brown's direct appeal on April 27, 2007.  Brown then had ninety days to file an Application to Reopen his direct Appeal under Ohio R. App. P. 26(B)(1).[6]

Brown filed his Rule 26(B) Application to Reopen in the Ohio Court of Appeals on August 1, 2007.  (Doc. #20, Exh. 23).  He asserted that his counsel on direct appeal provided constitutionally ineffective assistance in numerous ways.  (Doc. #20, Exh. 23). The Ohio Court of Appeals denied Brown's Application to Reopen as untimely and as lacking good cause to excuse its tardiness.

Brown next asserted in an Application for Reconsideration that he had timely filed his Rule 26(B) Application under the "prison mail rule" by giving it to prison personnel for mailing in a timely manner.  Rejecting the prison mail rule as "discredited," the Ohio

---

[6]  Ohio R. App. P. 26(B)(1) states:  "A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence ... in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

Court of Appeals denied Brown's Application for Reconsideration. (Doc. #20, Exh. 26).

Brown sought further review in the Ohio Supreme Court but to no avail. (Doc. #20, Exh. 30).

**4.**

Brown returned to the trial court in November 2007 with a Petition to Vacate or Set Aside Sentence under Ohio Rev. Code §2953.21. The trial court denied Brown's Petition as untimely. Brown pursued unsuccessful appeals, first in the Ohio Court of Appeals, then in the Ohio Supreme Court. (Doc. #20, Exhs. 35, 39, 41, 45, 49).

III. **Brown's Federal Habeas**
     **Corpus Petition and Amended Petition**

In the present case, Brown's habeas petition case raises eight grounds for relief. Brown's claims, when paraphrased, assert:

**Ground One:**

> The Ohio Court of Appeals denied Brown's constitutional rights to due process and equal protection guaranteed by denying his Application to Reopen his Appeal as untimely filed. Brown contends that the evidence he submitted to the Ohio Court of Appeals established his timely filing under the prison mailbox rule because the evidence showed he delivered his Application to Reopen to prison officials in a timely manner.

**Ground Two:**

> Brown's appellate counsel provided ineffective assistance in violation of his constitutional rights. Brown describes seven alleged problems with his appellate counsel's representation.

**Ground Three:**

6

The trial court violated his constitutional rights to a speedy trial and due process of law by failing to grant his motion to dismiss.

**Ground Four**:

The trial court deprived him of his constitutional right to due process by admitting into evidence unreliable identification testimony.

**Ground Five**:

The trial court deprived him of his due process right to present a witness on his own behalf when it refused defense counsel's attempt to call and expert witness, Dr. Lehman, to rebut a key prosecution witness.

**Ground Six**:

His convictions violate his right to due process because the evidence at trial was insufficient to support his convictions.

**Ground Seven**:

The trial judge imposed consecutive and maximum sentences based on factual findings in violation of Brown's constitutional right to a jury trial.

**Ground Eight**:

His trial counsel provided ineffective assistance through his cumulative errors in violation of his constitutional rights.

(Doc. #4 at 122-43).

With leave of court, Brown amended his habeas petition, adding one Ground for Relief – his proposed fifteenth ground for relief. (He was not permitted to add his proposed grounds nine through fourteen to his petition). Brown asserts in ground fifteen that the Ohio Court of Appeals erred by declining to apply Ohio's triple-count provision[7]

---

[7] *See* Ohio Rev. Code § 2945.71(E)

to his sentence. (Doc. #10 at 209-11).

## IV. Brown's Non-Cognizable State-Law Claims

Respondent contends that Brown's first, third, and fifteenth grounds for relief are based on purported violations of Ohio law and are, consequently, not cognizable in this federal habeas corpus case.

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475 (1991). It is therefore "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. "While it is true that habeas relief cannot be granted simply 'on the basis of a perceived error of state law,' *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984), when an error rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief." *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993); *see Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003) (and cases cited therein).

Brown claims in his first ground for relief that the Ohio Court of Appeals violated his rights to "due process and equal protection of the laws as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Art. I, §16 of the Ohio Constitution...." (Doc. #4 at 122). These violations occurred, according to Brown, when

the Ohio Court of Appeals denied his Application to Reopen Appeal as both untimely and unsupported by a showing of good cause sufficient to excuse its tardiness.  Brown also argues that the Ohio Court of Appeals violated his constitutional rights by denying his Motion for Reconsideration based on its conclusion that Brown mistakenly relied on the "discredited prison mail rule."[8]  Brown emphasizes that he timely filed his Application for Reopening by giving it to prison personnel for mailing before the ninety-day-filing deadline expired.  (Doc. #4 at 122).

Brown's reliance on the prison mail rule raises an issue of Ohio procedural law. To this extent, his first ground for relief asserts a violation of Ohio law that is not cognizable in federal habeas review.  *See Estelle*, 502 U.S. at 67-68.  Yet Brown's first ground for relief is likewise based on an asserted violation of his rights under the Due Process Clause.  Again, however, the roots of this constitutional claim extend to an error of state law without implicating a denial of fundamental fairness.  *Cf. Bugh*, 329 F.3d at 512 ("Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." (citations omitted)).

Brown also asserts that the errors by the Ohio Court of Appeals violated his federal constitutional right to equal protection.  Brown, however, has not alleged the existence of an improper classification or other circumstance suggesting a violation of his equal

---

[8]  (Doc. #20, Exh. 26 at 729).

protection rights.  *See Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005) ("Equal Protection Clause ... protects against arbitrary classifications, and requires that similarly situated persons be treated equally." (citation and internal punctuation omitted)).

Turning to Brown's third ground for relief, he argues that the trial court violated his rights under the Ohio's Speedy Trial Act and the Ohio Constitution, Art. I, §§10, 16. These state-law claims are not cognizable in federal habeas review.  *Estelle*, 502 U.S. at 67-68; *see Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000).  But Brown also asserts a violation of his right to a speedy trial provided by the Sixth and Fourteenth Amendments to the Constitution.  The potential vitality of this federal constitutional claim arises as a matter of pure federal law without depending upon or referring to Ohio law.  Indeed, it is completely unmoored from any asserted violation of state law.  *See, e.g., Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972).  Brown's third ground for relief therefore raises a cognizable claim under the Sixth and Fourteenth Amendments.

As to Brown's fifteenth ground for relief, he frames it as a violation of Ohio sentencing law – specifically, the triple-count provision in Ohio Rev. Code §2945.71(E). (Doc. #10 at 209-11).  This asserted violation of Ohio law is not cognizable in the instant habeas case.  *See Estelle*, 502 U.S. at 67-68.

Accordingly, Brown's first and fifteenth grounds for relief are not cognizable in federal habeas review.  Brown's third ground for relief, based on purported violations of Ohio's Speedy Trial Act and Ohio's Constitution, is not cognizable in federal habeas review.  Brown's third ground for relief is cognizable in the present case to the extent he

10

asserts a violation of his right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution.

## V.    Brown's Procedural Problems

Respondent contends that Brown has waived four of his claims – grounds for relief 2, 3, 5, and 15 – for purposes of federal habeas review by failing to present them to the Ohio courts in compliance with Ohio's procedural rules.  Brown contends that he did not commit any procedural defaults and has not waived federal habeas review of his claims.

### A.    Procedural Default and Waiver

A state prisoner seeking a writ of habeas corpus must first attempt to gain relief from his conviction and sentence in state court.  When seeking state relief, the prisoner must raise his claims as mandated by the state's adequate and independent procedural rules.  A prisoner who does not risks committing a procedural default that might forever block his path to obtaining federal habeas review.  *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing, in part, *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S.Ct. 2546 (1991)); *Rust v. Zent*, 17 F.3d 155, 160 (6th  Cir. 1994).  When a prisoner missteps in state court by failing to follow a particular state procedural rule, four factors apply to determine whether the state rule bars federal habeas review:

> 1.    Whether there is a firmly established state procedural rule with which the petitioner failed to comply;

11

2.      Whether the state court actually enforced the rule in sanctioning the petitioner's failure to comply;

3.      Whether the petitioner's failure to comply with the state procedural rule constitutes an adequate and independent ground for barring federal habeas review; and

4.      Whether cause exists to dispense with the procedural rule and whether the petitioner was actually prejudiced by the alleged constitutional error or whether a failure to conduct habeas review of a claim will result in a miscarriage of justice.

*See Deitz v. Money*, 391 F.3d 804, 808-09 (6th Cir. 2004)(and cases cited therein).

## B.      Second Ground for Relief

Brown asserts in his second ground for relief that his appellate counsel provided constitutionally ineffective assistance in seven ways. (Doc. #4 at 124-132). Brown's attempt to raise these claims in state court failed when the Ohio Court of Appeals rejected his Application as untimely filed, under Ohio Rule 26(B)'s ninety-day deadline, and when it later rejected his reliance on the prison mail rule. The Ohio Court of Appeals explained:

> Brown asserts ... that he delivered his application to the prison authorities for mailing on July 24, 2007, and that delivery to prison authorities for mailing should be tantamount to filing his application with the court. In support, he cites *State v. Owens* (1977), 121 Ohio App.3d 34, which held that "the date of delivery to prison authorities for mailing is deemed the date of filing." *Owens* was a per curiam opinion of this court which was expressly rejected in two later cases. *State v. Smith* (1997), 123 Ohio App.3d 48 and *State v. Finfrock* (Oct. 16, 1998), Montgomery App. No. 16944. In *Finfrock*, we specifically relied upon *State ex rel Tyler v. Alexander* (1990), 52 Ohio St.3d, which rejected the "prison mail rule."

> Brown has only invoked the discredited "prison mail rule," and we thus conclude that Brown has failed to show good cause for untimely filing.

(Doc. #20, Exh. 26).

Respondent contends that Brown committed a procedural default by attempting to raise them in his untimely filed Rule 26(B) Application and by not showing good cause for his untimely Application.

Assuming, as the Ohio Court of Appeals held, that the prison mail rule was "discredited" as a matter of Ohio law, the rule comes into play in this case as sufficient "cause" to excuse Brown's procedural default.

"To establish cause a petitioner must present a substantial reason to excuse his procedural default." *Rust*, 17 F.3d at 161. "'Cause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him; ... some objective factor external to the defense that impeded ... efforts to comply with the State's procedural rule." *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003)(internal brackets removed; emphasis in original)(quoting *Coleman*, 501 U.S. at 753); *see Bonilla*, 370 F.3d at 498.

Brown asserted in the Ohio Court of Appeals that he gave his Rule 26(B) Application on July 24, 2007. (Doc. #20, Exh. 25). He supported this assertion with a copy of the receipt for postage he paid on this same date and with the certificate of service on his Rule 26(B) Application also dated the same. *Id*., Exhs. 23, 25. "Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events, however, the rule is sufficient to excuse a procedural default based upon a late filing." *Maples*, 340 F.3d at 439. By placing his Rule 26(B)

13

Application into the prison mail system on July 24, 2007, Brown mailed his Application to the Ohio Court of Appeals five days before the filing deadline of August 1, 2007.  As in *Maples*, five days was sufficient time for Brown's Rule 26(B) to reach the Ohio Court of Appeals, during the normal course of events.  Because the subsequent delay in filing was not Brown's fault, good cause exists to excuse his procedural default.  *See Maples*, 340 F.3d at 438-39.

Brown has also experienced actual prejudice because the delay and resulting procedural default led to the refusals by the Ohio Court of Appeals and the Ohio Supreme Court to consider Brown's claim that his appellate counsel provided ineffective assistance. *See Maples*, 340 F.3d at 440 ("The prejudice resulting from the procedural default is that the Michigan Supreme Court refused to consider Maples's claim of ineffective assistance of counsel.").

Accordingly, Brown may proceed in this case with his second ground for relief – ineffective assistance of appellate counsel.

## C.    **Third and Fifth Fifteenth Grounds for Relief**

Respondent contends that Brown has waived federal habeas review of his third and fifth grounds for relief by not fairly presenting them to the Ohio courts as federal constitutional claims.

### 1.

"'[S]tate prisoners must give the state courts one full opportunity to resolve any

14

constitutional issues by invoking one complete round of the State's established appellate review process.'" *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).  To accomplish this, a state prisoner must fairly present the substance of his federal constitutional claims to the state courts before seeking federal habeas corpus relief.  *Whiting v. Burt*, 395 F.3d 602, 612-13 (6th Cir. 2005).  A prisoner commits a procedural default by not fairly presenting the state courts with his federal constitutional claim, if a state procedural rule closes the door to state judicial review.  *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010); *see Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009).

"A petitioner need not cite federal law 'book and verse' to fairly present a claim..., but the factual and legal underpinnings of the claim must be presented as a federal claim to the state courts." *Pudelski*, 576 F.3d at 605 (citations omitted).

Four things are significant to determining whether a claim has been fairly presented to the state courts:  "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Whiting*, 395 F.3d at 613 (citations omitted).  "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *McMeans v. Brigano* 228 F.3d 674, 681 (6th Cir. 2000).

15

**2.**

Brown's third ground for relief (as noted previously) asserts a violation of his right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution.  Did he fairly present this claim to the Ohio courts?

Brown claimed in the Ohio Court of Appeals, "The trial court erred when it denied [his] Motion to Dismiss in contradiction to Ohio's Speedy Trial Statute."  (Doc. #20, Exh. 15 at 554).  Brown also advanced this claim under federal constitutional law by asserting that his "right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution...," *id.*, and by citing to a state case recognizing this federal constitutional right, *id.* (citing *State v. Galluzzo*, 2006 WL 202599 (Ohio App. 2nd Dist.)).  In this manner, he fairly presented the Ohio Court of Appeals with both the state-statutory and the federal-constitutional foundations upon which his speedy-trial claim stood.  "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  *Baldwin v. Reese*, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351 (2004).  The fairness of Brown's presentation is also seen in the prosecutor's brief on direct appeal, which explicitly recognized the federal constitutional nature of Brown's speedy-trial claim.  The prosecutor wrote,  "The right of a criminal defendant to a speedy public trial of the charges against him is guaranteed by the Sixth Amendment to the Constitution and ... the Ohio Constitution.  In Ohio, the statutory

16

scheme set forth in [Ohio Rev. Code §] 2945.71 et seq. enforces a defendant's constitutional right to a speedy trial by imposing definite obligations on the State...." (Doc. #20, Exh. 17 at 629).  In light of he prosecutor's recognition of this federal claim during the Ohio Court of Appeals' proceedings, Respondent's present argument is precarious and ultimately untenable.

### 3.

Brown's fifth ground for relief is a different matter.  He asserts in the present case that the trial judge violated his due-process rights by barring him from presenting an expert witness in rebuttal.  But, Brown did not raise this claim in the Ohio courts as a violation of his federal constitutional rights.  He did not rely upon state or federal cases employing a federal constitutional analysis of a similar evidentiary issue; he did not phrase the claim in constitutional terms or in terms specific enough to allege a violation of a right guaranteed under the Constitution; and the circumstances of the evidentiary ruling he challenges are not well within the mainstream of federal constitutional law.  *See Whiting*, 395 F.3d at 613.  Neither Brown nor the record reveal the existence of cause and prejudice to excuse his procedural default or that miscarriage of justice will occur absent federal habeas review of his fifth ground for relief.

### 4.

In sum:

1.  Brown fairly presented the Ohio courts with his claim that the trial court denied him a speedy trial in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution; and

2.      Brown has waived federal habeas review of his fifth ground for relief

## VI.    AEDPA[9] Review

### A.      Brown's Claims

Brown's remaining federal constitutional claims arise under his following grounds

for relief:

Two:          ineffective assistance of appellate counsel;

Three:        speedy-trial violation;

Four:         unreliable eyewitness testimony;

Six:          insufficient evidence to support his convictions;

Seven:        sentences imposed in violation of his right to a jury trial; and

Eight:        ineffective assistance of trial counsel.

The Ohio Court of Appeals considered these claims on the merits, with sole the

exception of his claim that appellate counsel provided ineffective assistance.  Therefore,

the AEDPA governs federal-habeas review of these claims (except ground two).  *Hinkle v.*

*Randle*, 271 F.3d 239, 246 (6th Cir. 2001).

### B.      The AEDPA

United States District Courts have the authority to grant a writ of habeas corpus to a

prisoner who is state custody "in violation of the Constitution . . . of the United States."

_____

[9]  Codified, in part, under 28 U.S.C. §2254.  *See* Pub.L. No. 104-132, 110 Stat. 1214.

18

28 U.S.C. §2241(a), (c)(3).  "The writ of habeas corpus plays a vital role in protecting constitutional rights."  *Slack v. McDaniel*, 529 U.S. 473, 483, 120 S.Ct. 1595 (2000).

In the modern era (post-April 1996) of habeas corpus litigation, the AEDPA limits the reach of the writ of habeas corpus "'with respect to claims adjudicated on the merits in state court.'"  *Coomer v. Yukins*, 533 F.3d 477, 484 (6th Cir. 2008)(quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495 (2000)).  A writ of habeas corpus issues under the AEDPA "only if the state court's decision was (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) ... based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Washington v. Renico*, 455 F.3d 722, 728 (6th Cir. 2006) (quoting, in part, 28 U.S.C. §2254(d)).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law or if the state court decides a case differently than th[e Supreme] Court has on a set of materially indistinguishable facts. Conversely, [u]nder the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  A state court need not cite Supreme Court cases on point or even be aware of such cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.

*Coomer*, 533 F.3d at 484 (quoting *Williams*, 529 U.S. at 412-13) (other citation and quotation marks omitted)(brackets in *Coomer*).

"'[A] federal habeas court may not issue a writ under the unreasonable application clause simply because that court concludes in its independent judgment that the relevant

state-court decision applied clearly established Federal law erroneously or incorrectly.'"
*Lovell v. Duffey*, 629 F.3d 587, 594 (6th Cir. 2011)(quoting *Ruimveld v. Birkett*, 404 F.3d
1006, 1010 (6th Cir. 2005) (quoting *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843
(2002)).  "Rather, the issue is whether the state court's application of clearly established
federal law is 'objectively unreasonable.'"  *Lovell*,  629 F.3d at 594 (quoting *Miller v.
Francis*, 269 F.3d 609, 614 (6th Cir. 2001) and *Williams*, 529 U.S. at 410 (other citation
omitted).

### C.  Pre-Trial Identification

Brown contends that the trial court violated his right to due process under the Fifth
and Fourteenth Amendments by admitting the unreliable pretrial identification of witness
John Tindull as the perpetrator.  Brown explains that initially Tindull could not select him
(or anyone) out of a photographic lineup.  Brown argues:

> Suddenly at a preliminary hearing, Mr. Tindull was able to identify
> petitioner as his shooter.  At no time before trial did Mr. Tindull ever
> identify petitioner with a scar on his face, nor did Amy Goens.
> Subsequently at trial Mr. Tindull testified that he was 100% sure because of
> the scar on the leftside of petitioner's face.  Mr. Tindull's in-court
> identification was unduly suggestive because he had seen the photospread
> featuring petitioner with the scar on leftside of face and none of the photos
> feature the other photos with any scars also because petitioner was the only
> person in the courtroom from the photospread sitting at the defense table in
> jail attire accused of shooting Mr. Tindull.  Mr. Tindull's police report, Amy
> Goens police report and both of their descriptions of what the attacker was
> wearing during the attack are totally different from each others account....

(Doc. #4 at 135-36)(internal citations omitted; otherwise quoted verbatim without
corrections).

20

The Ohio Court of Appeals began its analysis of Brown's claim by identifying the pertinent legal principles as follows:

> Due process requires suppression of an identification, whether made in court or out of court if, the confrontation procedure was "unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances." *Manson v. Brathwaite* (1977), 432 U.S. 98, 116, 97 S.Ct. 2243.... "In the context of eyewitness identification testimony, an impermissibly suggestive identification procedure will be suppressed due to the substantial likelihood of irreparable misidentification." *Neil v. Biggers* (1972), 409 U.S. 188, 198, 93 S.Ct. 375.... "It is the likelihood of misidentification which violates a defendant's right to due process * * *." *Biggers*, 409 U.S. at 198. Thus, "reliability is the linchpin in determining the admissibility of identification testimony." *Manson*, 432 U.S. at 114.

(Doc. #20, Exh. 18 at 654-55) (additional internal citations omitted). By recognizing and accurately reiterating the principles established in *Manson* and *Biggers*, the Ohio Court of Appeals' decision was consistent with, not contrary to, the applicable Supreme Court case law.

The Ohio Court of Appeals discussed and applied these principles as follows:

> An in-court identification typically occurs under circumstances that suggest the identity of the defendant. *State v. Johnson*, 163 Ohio App.3d 132, 2005-Ohio-4243, 836 N.E.2d 1243, ¶ 55. However, such an identification may nonetheless possess sufficient indicia of reliability to comply with due process. *Id.* Suggestive out-of-court procedures, which could have possibly invalidated the in-court identification, were absent from this case because Tindull had been unable to identify Brown from the photospread presented to him by the police shortly after the attack. Moreover, Tindull's identification was made under oath, in court, and was subject to cross-examination. Tindull's inability or unwillingness to make an identification based on the photo array did not discredit his in-court identification of Brown, and there was no other basis to conclude that his in-court identification was unreliable. *See id.* at ¶ 57. As such, the trial court did not abuse its discretion in concluding that there were "no constitutional defects" in the identification testimony and in refusing to

21

suppress it.

(Doc. #20, Exh. 18 at 655).

The Ohio Court of Appeals' discussion, although vulnerable to criticism as incomplete, did not unreasonably apply *Manson* and *Biggers*.

> To determine whether an allegedly suggestive pre-trial identification casts an impermissible taint on a later in-court identification, a court utilizes a two-step evaluation. First, the court determines whether the procedure was unduly suggestive. If the court determines that the identification was unduly suggestive, it then uses five factors set out in *Neil v. Biggers* to evaluate "the totality of the circumstances to determine whether the identification was nevertheless reliable." Whether the factors demonstrate reliability in the identification process is a question of law.

*Mills v. Cason*, 572 F.3d 246, 251 (6th Cir. 2009)(citations omitted). Assuming – in Brown's favor – that Tindull's pre-trial identification of Brown during his preliminary hearing was unduly suggestive, application of the five factors set out in *Biggers* support the Ohio Court of Appeals' conclusions. The five factors are

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of the witness' prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, and [5] the length of time between the crime and the confrontation.

*Mills*, 572 F.3d at 251 (quoting *Biggers*, 409 U.S. at 199) (brackets added in *Mills*). The ultimate analysis considers the "totality of the circumstances of surrounding the pretrial identification weighed against any 'corrupting effect of the suggestive identification.'" *Mills*, 527 F.3d at 251 (quoting, in part, *Manson*, 432 U.S. at 114).

Considering the *Biggers* factors and the totality of the circumstances, Tindull's

initial identification of Brown as the perpetrator was sufficiently reliable.  Tindull had two separate opportunities to view Brown during the commission of the crime.  First when he heard a knock at his door, looked out the window, and saw Brown standing there.  (Doc. #21 at 1323-24).  Because Tindull did not recognize Brown, he did not open the door.  But later that morning, when Tindull heard another knock, he saw an acquaintance and opened the door.  *Id.* at 1324.  He then saw Brown for the second time, and he continued to see Brown as he forced his way into the hotel room holding a gun.  *Id.*  The lights in the room were on when Tindull opened the door, and he got a good enough look at Brown each time he appeared at the door to recognize him as the same man.  *Id.* at 1325-27.

When meeting with police, Tindull described his assailant as 5′10″ tall, medium build, dark complected, grayish wooly hair, and with a scar on his left cheek.  (Doc. #21 at 1298, 1332, 1340-41.  Each element of this description was accurate.  Although Tindull could not initially identify Brown in a photo array, *id.* at 1330, he testified during trial that he was looking for, but did not see, a photograph of a man with a scar on the left side of his face, *id.*, and he was also focused on the fact that his attacker wore his hair in braids, *id.*  In addition, Tindull was presented with the photo array when he was in the hospital being treated for multiple gunshot wounds.  His injuries were not superficial.  He needed surgery to repair eight holes in his intestines and to "tie [his] bowels back."  *Id.* at 1330.  He never regained his hearing in his left ear after the shooting.  *Id.* at 1329.  In light of his injuries at the time police presented him with the photo array, his inability to select Brown from photos is not surprising.  For these reasons, the Ohio Court of Appeals' rejection of

23

Brown's pre-trial identification claim was not objectively unreasonable or incorrect.  *Cf.*

*Mills*, 572 F.3d at 250-52.

Lastly, even if the trial court committed a constitutional error by allowing Tindull

to testify at trial that Brown was the perpetrator, such error does not provide a basis for

federal habeas relief because it lacked a "substantial and injurious effect or influence in

determining the jury's verdict." *Fry v. Plilre*, 551 U.S. 112, 116, 127 S.Ct. 2321

(2007)(citation omitted); *cf. United States v. Wade*, 388 U.S. 218, 242 (1967)(admission of

suggestive identification testimony subject to harmless error review).  Witness Amy Goens

separately and independently identified Brown as the perpetrator.  She saw Brown shoot

Tindull.  (Doc. #21 at 1061).  She did not hesitate to select Brown from the photo array.

*Id.* at 999.  She identified him at trial at the perpetrator.  *Id.* at 1049.  And she knew Brown

from before the shooting, albeit by the name of Frank.  *Id.* at 1048-49.  At trial, she clearly

identified him as the man who made her knock on Tindull's motel door and who, a few

moments later, shot Brown.  *Id.* at 1049, 1057-61.  Brown's claimed constitutional error

thus provides no ground for federal habeas relief.  *See Plilre*, 551 U.S. at 116.

Accordingly, the Ohio Court of Appeals' rejection of Brown's pre-trial-

identification claim was not contrary to and did not involve an objectively unreasonable

application of clearly established federal law.

### D.    Right to a Speedy Trial

Brown finds a violation of his right to a speedy trial under the Sixth and Fourteenth

Amendments in the fact that he remained in jail for 106 days after his trial purportedly should have begun.  (Doc. #20, Exh. 15 at 555).

The Ohio Court of Appeals rejected Brown's speedy-trial claim once it concluded that it lacked merit under Ohio's speedy-trial statute.  (Doc. #20, Exh. 18 at 653-54).  This conclusion, under the circumstances of this case, was neither contrary to nor unreasonably applied standards established in the Supreme Court's leading speedy-trial case, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972).

> Under *Barker,* a court should consider four factors in analyzing whether a defendant's right to a speedy trial was violated: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.  *Id.* at 530, 92 S.Ct. 2182. "Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett v. United States,* 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).  This threshold is typically assumed if the delay is longer than one year.  *Id.* at 652 n. 1, 112 S.Ct. 2686.

*Girts v. Yanai*, 600 F.3d 576, 587-88 (6th Cir. 2010).  "The first step in this balancing test, the length of the delay, is the triggering factor because '[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'"  *Wilson v. Mitchell*, 250 F.3d 388, 394 (6th Cir. 2001) (quoting in part *Barker*, 407 U.S. at 530).

The maximum possible time between the date Brown was arrested, May 18, 2005, and the date his trial began, February 6, 2006, was several months less than one year. Consequently, the delay in bringing Brown to trial was not presumptively prejudicial to him.  *See id*. (and cases cited therein).  Brown raises many additional arguments in his

Traverse.  *See* Doc. #30 at 1650-58.  He has not, however, pointed to any particular prejudice his trial defense suffered as a interval between his arrest and trial.  The Ohio Court of Appeals' rejection of this claim was not contrary to and did not unreasonably apply Supreme Court caselaw.  *See Barker*, 407 U.S. at 532; *see also Vincent v. Seabold*, 226 F.3d 681, 691 (6th Cir. 2000).

Accordingly, Brown's Sixth Ground for Relief provides lacks merit.

### E.  <u>Insufficient Evidence</u>

Brown contends that the evidence was insufficient to support his convictions in violation of his constitutional right to due process because Goens' and Tindull's drug use, and other problems, rendered their testimony unreliable.  (Doc. #4 at 138-40).

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Fiore v. White,* 531 U.S. 225, 228-29 (2001).  Under *Jackson v. Virginia*, the court must determine if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found, beyond a reasonable doubt, each essential element of the crime.  443 U.S. at 319, 324.

In the instant federal habeas corpus, the AEDPA subjects Brown's insufficiency-of-evidence claim to a second level of deferential review:  he must demonstrate that the Ohio Court of Appeals failed to apply the correct standards under *Jackson* or applied the

*Jackson* standards in an objectively unreasonable manner.  *See White v. Steele*, 602 F.3d

707, 710 (6th Cir. 2009)(and cases cited therein).

The Ohio Court of Appeals considered and rejected Brown's arguments concerning

Goens' and Tindull's testimony as follows:

> Goens was questioned thoroughly about her drug usage and about her reason for not reporting Brown to the police after the shooting.  She also testified that she was not under the influence of drugs at trial and had not used drugs for several months.  The jury was in the best position to assess the truthfulness of this testimony and the extent to which Goens' drug usage may have affected her perceptions on the day of the shooting.  Likewise, the jury could assess the credibility of Goens' claim that she had not gone to the police after the shooting because Brown had threatened her and because of her drug usage.  Despite these factors, the jury apparently believed much of Goens' testimony, as was its prerogative.
>
> Likewise, Tindull admitted to crack and heroin use the week that he stayed at the Dayton Motor Motel in May 2005.  Specifically, he stated that he had used drugs about eleven hours before the attack, which happened in the early morning hours.  He indicated that he had had a drug problem since his time in Vietnam and that he had moved to Dayton for treatment of this problem at the VA hospital.  Tindull was cross-examined about his drug usage.  He was also questioned about his inability to identify Brown in a photo spread the week after the shooting, notwithstanding that he was "100 percent" sure in court that Brown was the perpetrator of the offense.  The jury made its credibility determination in light of this evidence, and we will not second-guess its assessment.

(Doc. #20, Exh. 18 at 658-59).

The Ohio Court of Appeals' decision was consistent with, and did not unreasonably

apply, *Jackson v. Virginia*, which reserves to the trier of fact the responsibility to resolve

conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the

basic facts to the ultimate facts.  *Jackson*, 443 U.S. at 318-19; *see also Herrera v. Collins*,

506 U.S. 390, 401-02 (1993); *Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  Indeed,

"'under *Jackson*, the assessment of the credibility of witnesses is generally beyond the

scope of [habeas] review.'"  *Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851 (1995).

Because Brown's arguments in the present habeas case focus on the purported unreliability

and lack of credibility in Goens' and Tindull's testimony, Brown presents no basis for

discarding the required deference applicable to the jury's credibility determinations under

*Jackson*.  *See id*.; *see also Johnson v. Mitchell*, 585 F.3d 923, 932 (6th Cir. 2009).  And

Brown's credibility arguments do not show that the Ohio Court of Appeals' decision was

contrary to, or unreasonably applied, *Jackson*'s standards.  *See also White*, 602 F.3d at

710.  He has consequently not surmounted the second level of deference mandated by the

AEDPA.

    Accordingly, Brown's Sixth Ground for Relief lacks merit.


**F.    Blakely/Foster Claim**

    Brown was sentenced to an eight-year term of imprisonment on each felonious

assault conviction (two convictions); a five-year term for having a weapon under a

disability; an eight-year term for aggravated burglary; and a three-year term for each

firearm specification.  He must concurrently serve his sentences for felonious assault and

having a weapon under a disability (amounting to eight years); he must serve those

sentences consecutive to his eight-year sentence for aggravated burglary (amounting to

sixteen years); and he must consecutively served a single three-year sentence for his

firearm-specification convictions.  (Doc #20, Exh. 7).  His total sentence amounts to

nineteen years.

Brown claims that his sentence violates his rights under the Sixth and Fourteenth

Amendments.  *See Blakely v. Washington*, 542 U.S. 296 (2004); *see also Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000).  The Ohio Court of Appeals found no merit in Brown's

sentencing challenge, explaining:

> Under this assignment of error, Brown attempts to construe the trial
> court's statement at sentencing that it had relied on "pertinent statutes in
> Ohio that relate to sentencing" as a violation of *State v. Foster*, 109 Ohio
> St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.  *Foster* recently held parts of Ohio
> sentencing scheme unconstitutional, including certain provisions related to
> maximum and consecutive sentences.
>
> There is no evidence in the record that the trial court made findings
> under any of the unconstitutional portions of the sentencing statute.  In fact,
> the court expressed its awareness of "the recent Supreme Court case"
> relating to sentencing before imposing Brown's sentence.  As such, the
> record does not indicate that Brown's sentence was based on improper
> fact-finding under the unconstitutional portions of the sentencing statute.

(Doc. #20, Exh. 18 at 662).

Brown has not explained how the Ohio Court of Appeals' decision was contrary to

or involved an unreasonably application of Supreme Court caselaw.  He instead argues

broadly, "The Sixth Amendment prohibits the judiciary from circumventing the limitations

which the legislature placed on the availability of criminal punishments which correspond

to varying degrees of criminal culpability.  The Court is in violation of clearly established

federal law."  (Doc. #4 at 141).  These conclusory arguments fail to connect his sentence

with any Sixth Amendment violation or show a conflict with any Supreme Court case,

29

including *Blakely*.  To the extent, moreover, that Brown contends that his consecutive sentences conflict with the Sixth Amendment, his contention lacks merit.  *See Oregon v. Ice*, 555 U.S. 160, 163-64 (2009) (*Blakely* and *Apprendi* do not apply to consecutive sentences).

Accordingly, Brown's Seventh Ground for Relief lacks merit.

### G.    Ineffective Assistance of Trial Counsel

Brown maintains that the cumulative effect of his trial counsel's errors deprived him of the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments.

### 1.

A violation of the right to the assistance of counsel guaranteed by the Sixth Amendment is established in two steps:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).

Trial counsel's performance is reviewed in a highly deferential manner:  "[A] court must engage in the strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance...." *Id*. 466 U.S. at 689.  When trial counsel's

decisions or omissions constituted trial strategy, his or her performance was not

constitutionally deficient.  *Id*.

In addition, the AEDPA precludes a *de novo* review of Brown's ineffective

assistance of counsel (IAC) claim.  *See Yarborough v. Alvarado*, 541 U.S. 652, 665

(2004); *see also Price v. Vincent*, 538 U.S. 634, 639, 123 S.Ct. 1848, 1852 (2003).

> The Supreme Court has made clear that post-AEDPA claims of
> ineffective assistance of counsel brought by habeas petitioners will succeed
> only in very limited circumstances....  For [the petitioner] to succeed..., he
> must do more than show that he would have satisfied *Strickland's* test if his
> claim were being analyzed in the first instance, because under §2254(d)(1),
> it is not enough to convince a federal habeas court that, in its independent
> judgment, the state-court decision applied *Strickland* incorrectly.  Rather, he
> must show that the ... [state] Court of Appeals applied *Strickland* to the facts
> of his case in an objectively unreasonable manner.

*Payne v. Bell*, 418 F.3d 644, 665 (6th Cir. 2005) (citation omitted); *see Hodge v. Hurley*,

426 F.3d 368, 385-89 (6th Cir. 2005).

## 2.

Brown contends that trial counsel erred (1) by not investigating and preparing for

the testimony of Malissa McLain before trial, even though her name appeared on the

State's witness list; (2) by not filing a motion for discovery; (3) by not obtaining a

subpoena to compel patrol office Anthony Sawmiller's presence and testimony at trial; and

(4) by not obtaining a subpoena to compel the testimony of an alibi witness.

The Ohio Court of Appeals began its discussion of Brown's IAC claim by correctly

describing the standards applicable to this claim under *Strickland*.  (Doc. #20, Exh. 18 at

659-60).  Its decision, therefore, was not contrary to clearly established federal law.

The Ohio Court of Appeals then applied *Strickland* as follows:

Brown asserts that counsel was unprepared to call three witnesses who could have been helpful to his defense.  The first was Malissa McLain, who testified that Brown had admitted that he had "had to pop a cap in somebody's ass" at the Dayton Motor Motel the morning of the shooting.  Although McLain's name had appeared on the state's witness list and she was called by the state, defense counsel had not talked to this witness before trial because her observations on the night in question seemed "fairly insignificant" based on the police reports.  According to the reports, she had apparently acknowledged seeing someone in boxer shorts sitting in front of the Dayton Motor Motel earlier in the evening.  The prosecutor claimed to have learned of McLain's conversation with Brown the day of the shooting only the day before her testimony.  Counsel argued unsuccessfully that he should have heard about this new evidence from the prosecutor before the witness testified, even if the state had only discovered it a day earlier.

We cannot say that counsel's conduct in failing to question or subpoena McLain before trial fell below an objective level of reasonableness.  McLain had appeared on the state's witness list, but the record of her statement in the police reports was apparently limited to having seen someone in boxer shorts sitting in front of the motel.  Based on this information, counsel could have reasonably concluded that McLain's testimony was insignificant.  Moreover, he strenuously objected to the use of this testimony at trial, claiming that both he and the prosecutor had been "ambushed" by her additional revelations.  Counsel's conduct was not unreasonable under the circumstances.

Brown also objects to his counsel's failure to subpoena Officer Sawmiller and Cheri Tuinstra.  Sawmiller allegedly could have testified that he stopped someone in the vicinity of the motel on the night in question who resembled the description of the suspect.  The police did not consider this man a suspect, but their reasons for that determination are undeveloped in the record.  Neither the state nor the defense subpoenaed Sawmiller, so he was unavailable when the defense expressed its desire to call him.

Although Sawmiller's testimony may have raised some questions about the police investigation, we will not speculate as to whether his testimony would have helped Brown.  Brown has not demonstrated based on

this record that the outcome of the trial would have been different but for counsel's failure to subpoena this witness.

Regarding Cheri Tuinstra, it appears from the transcript that Brown wanted this witness called, but that defense counsel did not think her testimony would be beneficial to the defense. Tuinstra apparently could have offered testimony contradicting McLain's testimony about Brown's whereabouts at the time of his alleged encounter with McLain. In other respects, however, her testimony would have been detrimental to the defense, and counsel ultimately withdrew his request to call her. Counsel's actions with respect to this witness appear to have been reasonable.

(Doc. #20, Exh. 18 at 660-62).

Brown has not demonstrated that the Ohio Court of Appeals' unreasonably applied *Strickland's* standards. Beginning with defense counsel's alleged lack of preparation to cross-examine McLain, the appellate court correctly noted that no one – not even the prosecutor – knew that McLain would reveal Brown's inculpatory statements until the day before trial. Where no one knew about McLain's information until the eve of trial, defense counsel did not err, and cannot be deemed constitutionally ineffective, for not anticipating her testimony. Regardless of what was anticipated, defense counsel's cross-examined McLain in an effective manner by getting her to explain, in essence, that she had been on a drug binge around the time of the shooting and that she had been hanging out in the area for "days ... All day, I'm sure." (Doc. #21 at 1207-10). In doing so, defense counsel presented the jury with a reason to discount McLain's credibility. He did repeated this reason during closing argument, pointing out that McLain had been on a "five-day binge" at the time of the incident and that her testimony about knowing Brown for about two years was implausible. (Doc. #21 at 496-97).

33

As to McLain's testimony about Brown's statement, defense counsel argued rhetorically: "Does that mean that this defedants, Jeff Brown, admitted and said that he shot somebody?  This is within hours of this happening, within hours of him going to jail?  And where did this happen?  Well her [McLain's] timing's off.  She doesn't know.  She doesn't know what her timeframes are.  But we know that less than 24 hours later, he's in Montgomery County Jail, so I don't know when that conversation took place or what it means."  (Doc. #21 at 498).

Brown's arguments about his counsel's failure to file for discovery and file a witness list are meritless.  Brown was entitled to discovery under Ohio R. Crim. P. 16 regardless of whether counsel formally requested it.  Brown has therefore not shown how the failure to request discovery constituted deficient performance or prejudiced his defense.  Similarly, as to counsel's omission in not filing a witness list, Brown has not shown how this ministerial misstep constituted deficient performance or prejudiced his defense.  *See Strickland*, 466 U.S. at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Next, although Brown points to defense counsel's failure to "subpoena alibi witnesses," he fails to identify these potential witnesses.  Assuming one was Cheri Tuinstra, the Ohio Court of Appeals considered counsel's decision not to call her as a witness and found the decision reasonable.  Brown presents no particular basis for

34

concluding otherwise, and he has therefore not shown that the Ohio Court of Appeals erred or applied *Strickland* in an objectively unreasonable manner.  Brown instead merely points out – in hindsight – what defense counsel could have done better.  In doing so, the errors Brown points to, when considered alone or cumulatively, fail to overcome the strong presumption that counsel's conduct was "within the wide range of reasonable professional assistance."  *Strickland*, 489 U.S. at 689.

In the end, even if defense counsel made some or all the mistakes Brown has identified, he cannot show "a reasonable probability" that "the result of the proceeding would have been different" but for his counsel's errors.  *Strickland*, 466 U.S. at 694.   The errors Brown identifies, if absent, leave untouched the combination of Goins' and Tindull's testimony, which provided highly probative direct evidence upon which jury could base its verdict.  Brown has therefore not shown any prejudice stemming from defense counsel's purported errors.

Because Brown has not shown that his trial counsel's performance was constitutionally ineffective or that the Ohio Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*, his IAC claim does not merit habeas relief.

### H.    Ineffective Assistance of Appellate Counsel

Brown's remaining (and most voluminous) ground for relief asserts that his appellate counsel provided constitutionally ineffective assistance.

# 1.

*Strickland*'s standards apply to claims of ineffective assistance of appellate counsel, because the "Sixth Amendment guarantees the right to effective assistance of counsel on a first direct appeal as of right." *Boykin v. Webb*, 541 F.3d 638, 647 (6th Cir. 2008) (citing in part *Evitts v. Lucey*, 469 U.S. 387 (1985)); *see Burger v. Kemp*, 483 U.S. 776 (1987); *e.g., Smith v. State of Ohio Dep't. of Rehab. & Corrections*, 463 F.3d 426, 432-35 (6th Cir. 2006).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermined the reliability of the defendant's convictions." *McMeans*, 228 F.3d at 682. Beginning with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 687, a non-exhaustive list of performance-related questions is considered. *Whiting*, 395 F.3d at 616 n.8. In the present case, the following questions are the most pertinent:

1.      Were the issues omitted on appeal 'significant and obvious'?

2.      Was there arguably contrary authority on the omitted issues?

3.      Were the omitted issues clearly stronger than those presented?

*Whiting*, 395 F.3d at 616.[10]

---

[10]   The remaining questions are: (4) Were the omitted issues objected to at trial? (5) Were the trial court's rulings subject to deference on appeal? (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable? (7) What was appellate counsel level of experience and expertise? (8) Did the petitioner and appellate counsel meet and go over possible issues? (9) Is there evidence that counsel reviewed all the facts? (10) Were the omitted issues dealt with

## 2.

Brown contends that his appellate counsel provided ineffective assistance by not filing a transcript of the hearing "on his motion to suppress ... for speedy trial held on December 12-13, 2005." (Doc. #2 at 124-25). Omission of this transcript from the appellate record did not constitute error because, as explained above, *supra*, §VI(D), Brown's underlying claim – that his right to speedy trial was violated – wholly lacked merit. "'[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (citation omitted).

Brown contends that appellate counsel provided ineffective assistance by failing to raise a claim of prosecutorial misconduct. Yet, Brown's allegations of prosecutorial misconduct do not identify significant and obvious issues that should have been raised on his direct appeal. *See* Doc. #4 at 125-27. For example, although he alleges that the prosecutor improperly vouched for the truthfulness of the State's witnesses, the record does not support his vouching allegation. *See, e.g.,* Doc. #4 at 131 (and transcript pages cited therein). The additional allegations of procedural misconduct Brown describes do not reveal the presence of issues that were clearly stronger than those raised by counsel on direct appeal. *See* Doc. #4 at 125-27.

Brown next contends that his appellate counsel provided ineffective assistance by not raising a due-process claim based on trial counsel's failure to secure a ruling from the

---

in other assignments of error? (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt? *Whiting*, 395 F.3d at 616 n.8.

trial court on his motion to dismiss under Ohio R. Crim. P. 29, at the close of the

prosecution's case.  This claim is at least partly subsumed in his counsel's contention on

direct appeal that the manifest weight of the evidence did not support Brown's

convictions.  In addition, Goins' and Tindull's testimony provided sufficient evidence to

support his convictions.  Counsel therefore did not err by, and no prejudice arose from,

appellate counsel's omission of an attack upon trial counsel's conduct in relation to his

Ohio R. Crim. P. 29 Motion.  Although Brown describes many additional claims or

arguments appellate counsel should have raised in the Ohio Court of Appeals concerning

trial counsel's ineffectiveness, Brown's attacks on trial counsel's performance are either

meritless (for reasons addressed previously, *supra*, §VI(G)) or so weak as to justify

appellate counsel's omission of them on direct appeal.  *See* Doc. #4 at 130-33 (listing, in

part, seven purported errors by trial counsel); *see also Howard v. Bouchard*, 405 F.3d 459,

485 (6th Cir. 2005) ("Counsel's failure to raise an issue on appeal is ineffective assistance

only if there is a reasonable probability that inclusion of the issue would have changed the

result of the appeal.") (citation omitted).

Accordingly, Brown's second ground for relief lacks merit.

## VII.  <u>Certificate of Appealability</u>

Before a petitioner may appeal a denial of his habeas petition, he must first obtain a

certificate of appealability.  28 U.S.C. §2253(c)(1)(A).  To obtain a certificate of

appealability when a habeas petition is denied on the merits, the petitioner must make a

substantial showing of the denial of a constitutional right.  *Slack*, 529 U.S. at 484.  This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack*, 529 U.S. at 484.  If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling.  *Slack*, 529 U.S. at 484.

The conclusions reached in the instant Report are not debatable by jurists of reason and the case does not otherwise present issues adequate to deserve encouragement to Brown to proceed further.  Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.     Jeffrey Antonio Brown's Petition and Amended Petition for Writ of Habeas Corpus be DENIED and DISMISSED;

2.     The Remaining Motions (Doc. #s 38, 41, 47, 48) be DENIED as moot;

3.     A certificate of appealability issue under 28 U.S.C. §2253 be GRANTED as discussed herein; and

4.     The case be terminated on the docket of this Court.


August 30, 2011                                          ___s/Sharon L. Ovington___
                                                              Sharon L. Ovington
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).